IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| D. RAY STRONG, as Chapter 11 trustee for Castle Arch Real Estate Investment Company, LLC,<br><br>               Appellant,<br><br>v.<br><br>PRINCE, YEATES & GELDZAHLER, PC, a Utah professional corporation; ADAM S. AFFLECK, an individual; and DOE INDIVIDUALS I-V,<br><br>          Appellees/Cross-Appellants. | **MEMORANDUM DECISION AND ORDER DENYING AND DISMISSING BANKRUPTCY APPEAL AND FINDING CROSS-APPEAL MOOT**<br><br><br>Case No. 2:15-cv-00475-DN<br><br>District Judge David Nuffer |

This appeal arises from an adversary proceeding[1] in the United States Bankruptcy Court for District of Utah. The complaint by Appellant D. Ray Strong ("Strong"), as Chapter 11 trustee for Castle Arch Real Estate Investment Company, LLC ("CAREIC"), alleged legal malpractice claims against Appellees/Cross-Appellants Prince, Yeates & Geldzahler, PC and Adam S. Affleck (collectively "Prince Yeates").[2] The claims arose from Prince Yeates's representation of CAREIC as debtor-in-possession ("DIP") counsel.

Prince Yeates sought dismissal of Strong's claims through two motions for summary judgment. The first argued that Strong's claims were precluded by a settlement agreement regarding Prince Yeates's legal fees ("Res Judicata Motion").[3] The second motion argued that

---

[1] *Strong v. Prince, Yeates & Geldzahler, PC et al.*, Adv. Pro. No. 15-2007 (D. Utah Bankr. 2015).

[2] Amended Complaint, *Strong v. Prince, Yeates & Geldzahler et al.*, civil no. 140908507, State of Utah, Third Judicial District Court ("Amended Complaint"), Appellant's Appendix Volume IV of V – Pages 1062-1226 ("Aplt. App. Vol. IV Part A") at 1140-1154, docket no. 20-1, filed Aug. 25, 2015.

[3] Motion for Summary Judgment Re: Claim Preclusion/Res Judicata and Supporting Memorandum ("Res Judicata Motion"), Supplemental Appendix to Combined Appellees' Brief and Cross-Appellants' Brief of Prince, Yeates &

Strong could not prove damages on his claims ("Damages Motion").[4] The bankruptcy court denied Prince Yeates's Res Judicata Motion,[5] but granted its Damages Motion and dismissed Strong's claims and the adversary proceeding.[6]

Strong appeals the bankruptcy court's memorandum decision and order granting Prince Yeates's Damages Motion, and the judgment dismissing the adversary proceeding.[7] Prince Yeates cross-appeals the bankruptcy court's order denying its Res Judicata Motion.[8] Because the bankruptcy court did not err in granting Prince Yeates's Damages Motion, Strong's appeal[9] is DENIED and DISMISSED with prejudice. The bankruptcy court's memorandum decision[10] and order[11] granting Prince Yeates's Damages Motion, and its judgment[12] dismissing the adversary proceeding are AFFIRMED. And consequently, Prince Yeates's cross-appeal[13] is MOOT.

---

Geldzahler, PC and Adam S. Affleck ("Cross-Aplt. App.") Vol. 7 at 1951-2036, docket no. 35-7, filed Nov. 13, 2015.

[4] Motion for Summary Judgment Re: Damages and Supporting Memorandum ("Damages Motion"), Appellant's Appendix Volume IV of V – Pages 1227-1707 ("Aplt. App. Vol. IV Part B") at 1227-1265, docket no. 21-1, filed Aug. 25, 2015.

[5] Order (1) Denying Defendants' Motion for Summary Judgment Regarding Claim Preclusion, and (2) Granting Trustee's Cross-Motion for Summary Judgment Regarding Non-Applicability of Claim Preclusion ("Res Judicata Order"), Cross-Aplt. App. Vol. 8 at 2663-2667, docket no. 35-8, filed Nov. 13, 2015.

[6] Memorandum Decision, Appellant's Appendix Volume V of V – Pages 1708-1937 ("Aplt. App. Vol. V") at 1849-1859, docket no. 22-1, filed Aug. 25, 2015; Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862; Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[7] Notice of Appeal and Statement of Election, docket no. 1, filed June 6, 2015.

[8] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

[9] Notice of Appeal and Statement of Election.

[10] Memorandum Decision, Aplt. App. Vol. V at 1849-1859.

[11] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862.

[12] Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[13] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

**Contents**

BACKGROUND ......................................................................................................... 3
JURISDICTION ...................................................................................................... 10
STANDARD OF REVIEW ......................................................................................... 10
DISCUSSION ......................................................................................................... 12
    The bankruptcy court did not err in granting Prince Yeates's Damages Motion ............ 13
        The bankruptcy court did not err when it concluded that Strong was required to
            present sufficient evidence to create a genuine trial issue on the fact of
            damages.................................................................................................... 14
        The bankruptcy court did not err when it addressed insurability, duty, and
            proximate causation when determining that the CAOP I Claim was
            insufficient to establish damages on Strong's claims .............................. 16
        The bankruptcy court did not err when it concluded that the CAOP I Claim was
            insufficient to establish the existence of damages on Strong's claims ..... 20
ORDER ................................................................................................................... 27

# BACKGROUND

CAREIC was organized in April 2004 for the purpose of raising funds from investors to acquire and develop raw land for eventual resale.[14] In October 2011, a state court receiver filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the District of Utah for CAREIC and six of its affiliates, including Castle Arch Opportunity Partners I ("CAOP I").[15] In November 2011, the state court receiver turned over possession, custody, and control of the entities' respective property to CAREIC and the affiliates in their capacities as DIPs.[16] Prince Yeates began representing CAREIC as DIP counsel on November 8, 2011, and the bankruptcy

---

[14] Findings of Fact and Conclusions of Law in Support of Order Granting Chapter 11 Trustee's Motion to Substantively Consolidate CAOP Managers, LLC; Castle Arch Kingman, LLC; Castle Arch Smyrna, LLC; Castle Arch Secured Development Fund, LLC; Castle Arch Star Valley, LLC and Castle Arch Real Estate Investment Company, LLC ("Consolidation Findings and Conclusions"), Appellant's Appendix Volume II of V – Pages 287-786 ("Aplt. App. Vol. II") at 546 ¶¶ 34, 36, 555 ¶ 60, docket no. 18-1, filed Aug. 25, 2015.

[15] In re Castle Arch Real Estate Investment Company, LLC Chapter 11, Appellant's Appendix Volume I of V – Pages 1-286 ("Aplt. App. Vol. I") at 179-211, docket no. 17-1, filed Aug. 25, 2015; In re Castle Arch Opportunity Partners I, LLC Chapter 11, Appellant's Appendix Volume III of V – Pages 787-1061 ("Aplt. App. Vol. III") at 1036-1053, docket no. 19-1, filed Aug. 25, 2015; Memorandum Decision at 2, Aplt. App. Vol. V") at 1850.

[16] Motion for Joint Administration at 4 ¶ 13, Aplt. App. Vol. I at 266.

court formally authorized the representation by order entered on January 25, 2012.[17] CAREIC's affiliates retained separate counsel.[18]

On January 12, 2012, Prince Yeates filed a motion for joint administration of the CAREIC and affiliates' bankruptcy cases.[19] The motion asserted that "[t]here are intercompany obligations between CAREIC and each of [its] Affiliates."[20] The motion also asserted that "there may exist intercompany transfers between CAREIC and [its] Affiliates that are subject to a trustee's avoiding powers under 11 U.S.C. §§ 544, 547, and/or 548."[21] Prince Yeates's contemporaneous billing records indicate that Prince Yeates reviewed the entities' bankruptcy schedules to "identify inter-corporate claims and potential bankruptcy causes of action in connection with [the] motion for joint administration."[22] However, neither the motion nor Prince Yeates's billing records identified any specific intercompany obligations, transfers, or claims. The bankruptcy court granted the motion on February 14, 2012.[23]

Prince Yeates continued its representation of CAREIC until at least May 3, 2012, when Strong was appointed as CAREIC's Chapter 11 trustee.[24] Strong's appointment occurred by stipulation of CAREIC in response to a motion filed by CAREIC's Official Committee of

---

[17] Letter Re: Representation in Bankruptcy, Aplt. App. Vol. IV Part A at 1127-1128, Order Authorizing (1) Employment of Special Counsel, and (2) Retainer for Chapter 11 Counsel, Aplt. App. Vol. I at 275-280; Application for Allowance of Attorney Fees and Costs at 2 ¶ 2.c., Aplt. App. Vol. II at 465.

[18] Memorandum Decision at 2, Aplt. App. Vol. V at 1850.

[19] Motion for Joint Administration, Aplt. App. Vol. I at 263-270.

[20] *Id*. at 5 ¶ 15, Aplt. App. Vol. I at 267.

[21] *Id*. at 5 ¶ 16, Aplt. App. Vol. I at 267.

[22] Application for Allowance of Attorney Fees and Costs at Exhibit B, Aplt. App. Vol. II at 479; Memorandum Decision at 9, Aplt. App. Vol. V at 1857.

[23] Order Granting Motion for Joint Administration, Aplt App. Vol. I at 283-286.

[24] Order for Appointment of Trustee, Aplt. App. Vol. II at 462-463; Application for Allowance of Attorney Fees and Costs at 2 ¶ 1.b., Aplt. App. Vol. II at 465; Opposition to Defendants' Motion for Summary Judgment (Damages) at xv ¶ 13, Aplt. App. Vol. V at 1722; Notice of Appointment of Chapter 11 Trustee, Cross-Aplt. App. Vol 1 at 306-307, docket no. 35-1, filed Nov. 13, 2015.

Unsecured Creditors.[25] Strong was not appointed as the trustee of CAREIC's affiliates at that time; rather, he assumed management of the affiliates as DIP.[26]

As CAREIC's Chapter 11 trustee, Strong filed a motion to consolidate CAREIC and the affiliates' bankruptcy cases, with the exception of CAOP I and Castle Arch Opportunity Partners II ("CAOP II").[27] Strong asserted that CAREIC and the affiliates were managed by a single management team, that CAREIC's Board of Directors dealt with business for all of the entities at its meetings, and that CAREIC employees performed accounting and other administrative services for all of the entities.[28]

The bankruptcy court granted Strong's motion to consolidate on February 8, 2013.[29] The bankruptcy court found that investor funds were "used indiscriminately by [CAREIC and its affiliates] to fund whatever entity was in need of cash at any given time,"[30] as if the money was "part of one big 'piggy bank.'"[31] Strong became the Chapter 11 trustee for the consolidated CAREIC entities, and he managed CAOP I and CAOP II as DIP.[32]

On February 25, 2013, Strong filed a plan of liquidation for the consolidated CAREIC entities and CAOP I and CAOP II,[33] which was subsequently amended twice ("Plan of

---

[25] Order for Appointment of Trustee at 2, Aplt. App. Vol. II at 463; The Official Committee of Unsecured Creditors' Motion for Appointment of a Chapter 11 Trustee Under 11 U.S.C. § 1104 or, in the Alternative, to Convert Under 11 U.S.C. § 1112, Aplt. App. Vol. I at 281-282.

[26] Opposition to Defendants' Motion for Summary Judgment (Damages) at xiv ¶ 12, Aplt. App. Vol. V at 1721.

[27] Consolidation Findings and Conclusions at 6 ¶ 8, Aplt. App. Vol. II at 538.

[28] Id. at 9 ¶¶ 17-19, Aplt. App. Vol. II at 541.

[29] Order Granting Chapter 11 Trustee's Motion to Substantively Consolidate CAOP Managers, LLC; Castle Arch Kingman, LLC; Castle Arch Smyrna, LLC; Castle Arch Secured Development Fund, LLC; Castle Arch Star Valley, LLC and Castle Arch Real Estate Investment Company, LLC, Aplt. App. Vol. II at 530-532.

[30] Consolidation Findings and Conclusions at 12 ¶ 25, Aplt. App. Vol II at 544.

[31] Id. at 22 ¶ 58, Aplt. App. Vol II at 554.

[32] Opposition to Defendants' Motion for Summary Judgment (Damages) at xiv ¶ 12, Aplt. App. Vol. V at 1721; Memorandum Decision at 3, Aplt. App. Vol. V at 1851.

[33] Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013, Aplt. App. Vol. III at 787-847.

Liquidation").[34] The bankruptcy court confirmed the Plan of Liquidation on June 7, 2013.[35] Under the confirmed Plan of Liquidation, separate trusts were created to hold the assets of the consolidated CAREIC entities' estate ("CAREIC Trust"), the CAOP I's estate ("CAOP I Trust"), and the CAOP II's estate ("CAOP II Trust").[36] Strong also became liquidating trustee of the three trusts.[37]

Approximately 17 months later, on November 11, 2014, the CAOP I Trust and the CAREIC Trust entered a settlement agreement.[38] The settlement agreement provide for an allowed general unsecured claim against CAREIC in the amount of $2.9 million ("CAOP I Claim").[39] Strong participated on both sides of the settlement agreement, and a court-appointed conflicts referee supervised and consented to the agreement.[40]

The CAOP I Claim related to an intercompany transfer of land and water rights in Tooele, Utah.[41] CAREIC's amended bankruptcy schedules, filed on December 20, 2011, listed transfers of land and water rights in the Statement of Financial Affairs, but not as claims.[42] CAOP I's amended bankruptcy schedules, filed on December 23, 2011, listed a contingent and

---

[34] First Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013, Aplt. App. Vol. III at 848-906; Second Amended Chapter 11 Trustee's Plan of Liquidation Dated February 25, 2013 ("Plan of Liquidation"), Aplt. App. Vol. III at 907-966.

[35] Order Confirming Chapter 11 Trustee's First Amended Plan of Liquidation Dated February 25, 2013 as Modified ("Order Confirming Plan of Liquidation"), Aplt. App. Vol. III at 967-975.

[36] Plan of Liquidation at 33-34 Art. VI §§ 1-3, Aplt. App. Vol. III at 943-944.

[37] Order Confirming Plan of Liquidation at 3-4 ¶¶ 5-6, Aplt. App. Vol. III at 969-970.

[38] Settlement Agreement, Aplt. App. Vol. III at 1027-1033.

[39] *Id*. at 4 § 2(d), Aplt. App. Vol. III at 1030.

[40] *Id*. at 3-4 § 1, 7, Aplt. App. Vol. III 1029-30, 1033; Declaration of Weston L. Harris, Conflicts Referee, in Support of Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Conflict Resolution Procedures to Approve Settlement Agreement Between the Legacy Trust and CAOP I Trust Related to Prepetition Intercompany Claims, Aplt. App. Vol. III at 1006-1014.

[41] Settlement Agreement at 1-2 Recitals D-L, Aplt. App. Vol. III at 1027-1028.

[42] Statement of Financial Affairs – Amended at 7, Aplt. App. Vol. I at 249.

unliquidated claim of "unknown" value against CAREIC and CAOP Managers, LLC for breach

of fiduciary duty related to the Tooele land and water transaction.[43] The CAOP I Claim's $2.9

million value as a general unsecured claim was not established until the CAOP I Trust and the

CAREIC Trust entered the settlement agreement in November 2014.[44]

 On December 4, 2014, the bankruptcy court approved the settlement agreement,[45]

thereby allowing the CAOP I Claim as a $2.9 million general unsecured claim against

CAREIC.[46] On December 16, 2014, Strong, as CAREIC's Chapter 11 trustee, filed a complaint

for legal malpractice against Prince Yeates in the Third Judicial District Court of Salt Lake

County, Utah.[47] The complaint was amended on January 14, 2015.[48] And the case was later

removed to the United States Bankruptcy Court for the District of Utah as an adversary

proceeding.[49]

 Strong's complaint alleged three causes of action against Prince Yeates: (1) breach of

fiduciary duty: conflict of interest; (2) professional negligence; and (3) breach of contract.[50] The

complaint alleged, among other things, that Prince Yeates failed to notify or recommend that

CAREIC report actual or potential claims, including the CAOP I Claim, to CAREIC's insurance

---

[43] Schedule B – Personal Property – Amended, Aplt. App. Vol. III at 1061(M).

[44] Declaration of D. Ray Strong in Support of Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Conflict Resolution Procedures to Approve Settlement Agreement Between the Legacy Trust and CAOP I Trust Related to Prepetition Intercompany Claims ("Strong Declaration") at 4 ¶¶ 9-10, Aplt. App. Vol. III at 1018; Settlement Agreement at 4 § 2(d), Aplt. App. Vol. III at 1030.

[45] Order Granting Motion Pursuant to Federal Rule of Bankruptcy Procedure 9019 and Conflict Resolution Procedures for Order Approving Settlement Agreement Between the Legacy Trust and CAOP I Trust Related to Prepetition Intercompany Claims ("Order Approving Settlement Agreement"), Aplt. App. Vol. III at 1023-1025.

[46] Settlement Agreement at 4 § 2(d), Aplt. App. Vol. III at 1030.

[47] Complaint, *Strong v. Prince, Yeates & Geldzahler et al.*, civil no. 140908507, State of Utah, Third Judicial District Court, Aplt. App. Vol. IV Part A at 1068-1082.

[48] Amended Complaint, Aplt. App. IV Part A at 1140-1154.

[49] Notice of Removal of Civil Action, Aplt. App. Vol. IV Part A at 1062-1066.

[50] Amended Complaint at 10-15 ¶¶ 24-37, Aplt. App. IV Part A at 1140-1154

carrier for coverage under a $5 million directors and officers insurance policy issued by AXIS

Surplus Insurance Company ("AXIS Policy").[51] The AXIS Policy went into effect on December

20, 2010, and expired on January 20, 2012 ("Policy Period"), during Prince Yeates's

representation of CAREIC.[52] The AXIS Policy required CAREIC to report potential claims to

the carrier by January 20, 2012, and to report actual claims by March 21, 2012.[53] CAREIC did

not report any claims to the carrier during the claim reporting periods.[54]

Prince Yeates sought dismissal of Strong's complaint by filing two motions for summary

judgment.[55] The first motion, Prince Yeates's Res Judicata Motion, argued that Strong's claims

were precluded by a settlement agreement regarding Prince Yeates's legal fees that the

bankruptcy court approved on March 7, 2013.[56] The bankruptcy court denied the Res Judicata

Motion,[57] concluding that the settlement agreement contained no language releasing Strong's

legal malpractice claims.[58] The bankruptcy court also noted that its review and approval of the

---

[51] *Id*. at 2 ¶ 1, Aplt. App. Vol. IV Part A at 1141.

[52] Private Equity and Venture Capital Fund Liability Policy ("AXIS Policy") at Endorsement 16, Aplt. App. Vol. IV Part B at 1313.

[53] Private Equity and Venture Capital Fund Liability Policy Declarations ("AXIS Policy Declarations") at 1 Item 5, Aplt. App. Vol. IV Part B at 1273; AXIS Policy at 12 § VI, Endorsement 8 § I.B., Endorsement 16, Aplt. App. Vol. IV Part B at 1286, 1301, 1313.

[54] Memorandum Decision at 2, Aplt. App. Vol. V at 1850.

[55] Res Judicata Motion, Cross-Aplt. App. Vol. 7 at 1951-2036; Damages Motion, Aplt. App. Vol. IV Part B at 1227-1265.

[56] Res Judicata Motion at 13-21, Cross-Aplt. App. Vol. 7 at 1963-1971; Order Granting Chapter 11 Trustee's Motion for Order Approving Settlement Agreement Entered into Among the Trustee, the Official Committee of Unsecured Creditors and Prince Yeates & Geldzahler Under Federal Rule of Bankruptcy Procedure 9019, Cross-Aplt. App. Vol. 3 at 884-896, docket no. 35-3, filed Nov. 13, 2015.

[57] Res Judicata Order, Cross-Aplt. App. Vol. 8 at 2663-2667.

[58] Transcription of Electronically Recorded Proceedings Held May 14, 2015 at 45:24-46:2, Cross-Aplt. App. Vol. 8 at 2712-2713.

settlement agreement did not include a ruling regarding any potential legal malpractice claims against Prince Yeates.[59]

Prince Yeates's second motion, its Damages Motion, argued that Strong could not prove damages on his claims.[60] The bankruptcy court granted the Damages Motion,[61] concluding that Strong failed to provide evidence to "show even one dollar of possible damage."[62] Specifically, the bankruptcy court determined that Strong conceded CAREIC had not paid any actual defense costs or liability that would have been covered by the AXIS Policy.[63] And regarding potential future payments, Strong identified only two items: (1) the aggregate amount of investor interests listed in CAREIC's schedules as dealt with in the specific provisions of the Plan of Liquidation; and (2) the CAOP I Claim.[64] Regarding the first item, the bankruptcy court concluded that Strong failed to provide a single reference to any specific investor interest to which his argument applied; instead, Strong provided only "broad assertions" and "sweeping, unsupported generalizations" which were insufficient to avoid summary judgment.[65] Regarding the CAOP I Claim, the bankruptcy court determined that Prince Yeates could not be "retrospectively saddled" with a duty to report the claim to CAREIC's insurance carrier because the claim was "patently uninsurable" under the AXIS Policy at the time of Prince Yeates's representation.[66] The CAOP I Claim did not become a potential claim covered by the AXIS Policy until over a

---

[59] *Id*. at 49:9-17, Cross-Aplt. App. Vol. 8 at 2716.

[60] Damages Motion at 11-17, Aplt. App. Vol. IV Part B at 1237-1243.

[61] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862.

[62] Memorandum Decision at 2, Aplt. App. Vol. V at 1850.

[63] *Id*. at 4, Aplt. App. Vol. V at 1852.

[64] *Id.* at 7, Aplt. App. Vol. V. at 1855.

[65] *Id.* at 7-8, Aplt. App. Vol. V at 1855-1856.

[66] *Id.* at 9, Aplt. App. Vol. V at 1857.

year after Prince Yeates's representation, and only after "the eventual vagaries of Strong's own confirmed Plan [of Liquidation] . . . gave Strong a possible foothold as a covered 'liquidator.'"[67] Therefore, the bankruptcy court dismissed Strong's claims and the adversarial proceeding.[68]

Strong appeals the bankruptcy court's memorandum decision and order granting Prince Yeates's Damages Motion, and the judgment dismissing the adversary proceeding.[69] Prince Yeates cross-appeals the bankruptcy court's order denying its Res Judicata Motion.[70]

## JURISDICTION

Jurisdiction is proper pursuant to 28 U.S.C. § 158(a). This is an appeal from a final judgment of the United States Bankruptcy Court for the District of Utah in a case that was referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).

## STANDARD OF REVIEW

The district court "review[s] the bankruptcy court's legal determinations *de novo* and its factual findings under the clearly erroneous standard."[71] "A finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, [the district court is] left with the definite and firm conviction that a mistake has been made."[72] The district court "also reach[es] its own conclusions regarding state law legal issues, without deferring to the bankruptcy court's interpretation of state law."[73] "When conducting a *de novo* review, the

---

[67] *Id*.

[68] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862; Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[69] Notice of Appeal and Statement of Election.

[70] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

[71] *In re Miniscribe Corp.*, 309 F.3d 1234, 1240 (10th Cir. 2002) (internal quotations omitted).

[72] *Id*. (internal quotations omitted).

[73] *In re Wagers*, 514 F.3d 1021, 1024 (10th Cir. 2007).

[district] court is not constrained by the [bankruptcy] court's conclusions, and may affirm the [bankruptcy] court on any legal ground supported by the record."[74]

The parties' appeals pertain to the bankruptcy court's determinations summary judgment.[75] Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[76] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[77] In ruling on a motion for summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed in a light most favorable to the nonmoving party.[78]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[79] The movant "need not negate the nonmovant's claim," but need only point out "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[80] Upon such a showing, the nonmoving party "may not simply rest upon [the allegations or denials of] its pleadings." Rather, the nonmovant must "go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[81] "'The mere existence of a scintilla of evidence in support of the

---

[74] *In re Vaughan*, 311 B.R. 573, 578 (B.A.P. 10th Cir. 2004), *aff'd*, 241 Fed.App'x 478 (10th Cir. 2007).

[75] Notice of Appeal and Statement of Election; Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

[76] Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056.

[77] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[78] *Id.*

[79] *Id.* at 670-671.

[80] *Id.* at 671.

[81] *Id.* (internal quotations omitted).

[nonmovant's] position will be insufficient' to defeat a properly supported motion for summary judgment."[82]

## DISCUSSION

Strong appeals the bankruptcy court's memorandum decision and order granting Prince Yeates's Damages Motion, and the judgment dismissing the adversary proceeding.[83] The appeal presents one issue: Did the bankruptcy court err in granting Prince Yeates's Damages Motion when it concluded that the CAOP I Claim failed to establish the existence of damages on his claims?[84]

Prince Yeates cross-appeals the bankruptcy court's order denying its Res Judicata Motion.[85] The cross-appeal presents one issue: Did the bankruptcy court err in denying Prince Yeates's Res Judicata Motion when it concluded that Strong's claims were not precluded by the settlement agreement regarding Prince Yeates's legal fees?[86]

Because the bankruptcy court did not err in granting Prince Yeates's Damages Motion, Strong's appeal[87] is DENIED and DISMISSED with prejudice. The bankruptcy court's memorandum decision[88] and order[89] granting Prince Yeates's Damages Motion, and its

---

[82] *Moya v. United States*, 35 F.3d 501, 503 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

[83] Notice of Appeal and Statement of Election.

[84] Brief of Appellant at 1-2, docket no. 16, filed Aug. 25, 2015; Combined Appellees' Brief and Cross-Appellants' Brief of Prince, Yeates & Geldzahler, PC and Adam S. Affleck ("Brief of Cross-Appellants") at 3, docket no. 36, filed Nov. 23, 2015.

[85] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

[86] Brief of Cross-Appellant at 3; Brief of Cross-Appellee D. Ray Strong at 1, docket no. 42, filed Jan. 15, 2016.

[87] Notice of Appeal and Statement of Election.

[88] Memorandum Decision, Aplt. App. Vol. V at 1849-1859.

[89] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862.

judgment[90] dismissing the adversary proceeding are AFFIRMED. And consequently, Prince

Yeates's cross-appeal[91] is unnecessary to address and MOOT.

**The bankruptcy court did not err in granting Prince Yeates's Damages Motion**

Prince Yeates's Damages Motion raised three arguments for the dismissal of Strong's

claims:

> (1) that Strong could not show any AXIS Policy proceeds would have been available for the benefit of CAREIC's estate after priority payments of defense costs and liability for claims against CAREIC's former management;[92]
>
> (2) that Strong could not show CAREIC's estate actually paid any defense costs or liability on covered claims;[93] and
>
> (3) that Strong could not show any allowed claims against CAREIC's estate would have been covered by the AXIS Policy.[94]

The bankruptcy court bypassed Prince Yeates's first argument by assuming that some of the

proceeds from the AXIS Policy may have been available for the benefit of CAREIC's estate.[95]

The bankruptcy court then concluded that Strong conceded Prince Yeates's second argument—

that no actual damages had been paid on covered claims—by failing to respond to Prince

Yeates's relevant facts and argument in the briefing or at oral argument.[96] This was not

dispositive, however, because the bankruptcy court determined that a showing of future damages

would be sufficient to avoid summary judgment.[97] Therefore, the bankruptcy court's

determination on the Damages Motion turned on Prince Yeates's third argument—that Strong

---

[90] Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[91] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

[92] Damages Motion at 12-14, Aplt. App. Vol. IV Part B at 1238-1240.

[93] *Id*. at 16-17, Aplt. App. Vol. IV Part B at 1242-1243.

[94] *Id*. at 14-16, Aplt. App. Vol. IV Part B at 1240-1242.

[95] Memorandum Decision at 5-6, Aplt. App. Vol. V at 1853-1854.

[96] *Id*. at 6, Aplt. App. Vol. V at 1854.

[97] *Id*.

could not show any allowed claims against CAREIC's estate would have been covered by the AXIS Policy.[98] The bankruptcy court ultimately concluded that Strong failed to produce evidence "sufficient to show even one dollar of possible damages."[99]

Strong's appeal focuses exclusively on the bankruptcy court's treatment of the CAOP I Claim in determining that he failed to establish a genuine dispute for trial on the issue of damages.[100] Strong raises several arguments, which are summarized as follows:

(1) the bankruptcy court failed to account for the allowance of some speculation in damages on legal malpractice claims, and that damages are a fact-intensive inquiry rarely resolvable on summary judgment;[101]

(2) the bankruptcy court inappropriately addressed insurability, duty, and proximate causation in relation to the CAOP I Claim;[102] and

(3) the bankruptcy court failed to construe the AXIS Policy broadly in favor of coverage and erred when it concluded that the CAOP I Claim was insufficient to establish the existence of damages.[103]

Strong's arguments lack merit.

**The bankruptcy court did not err when it concluded that Strong was required to present sufficient evidence to create a genuine trial issue on the fact of damages**

Strong argues that the bankruptcy court failed to account for the allowance of some speculation in damages on legal malpractice cases, and that damages involve a fact-intensive inquiry that is generally not resolvable on summary judgment.[104] These arguments, which focus on the standard for establishing the amount of damages, miss the mark.

---

[98] *Id*.

[99] *Id*. at 2, Aplt. App. Vol. V at 1850.

[100] Brief of Appellant at 13-28.

[101] *Id*. at 26-28.

[102] *Id*. at 16-17; Appellant's Reply Brief (Summary Judgment Motion: Damages) ("Appellant's Reply Brief") at 7-10, docket no. 41, filed Jan. 15, 2016.

[103] Brief of Appellant at 14-26; Appellant's Reply Brief at 10-15.

[104] Brief of Appellant at 26-28.

Strong, as the plaintiff, "ha[d] the responsibility of producing sufficient evidence both to establish the fact of damages and [to] provide a reasonable, even though not necessarily precise, estimate of damages."[105] "The level of [evidence] required to establish the *fact* of [damages] is generally higher than that required to establish the *amount* of [damages]."[106] "The evidence must do more than merely give rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that the plaintiff suffered damage as result of [defendant's conduct]."[107]

The bankruptcy court did not dismiss Strong's claims because he failed to establish a precise amount of damages. Rather, the bankruptcy court determined that Strong failed to produce sufficient evidence to establish a genuine trial issue on the *fact* of damages.[108] The bankruptcy court expressly "acknowledge[d] that reasonable approximations, estimates, and averages can be sufficient to prove damages, particularly in legal malpractice actions."[109] But the bankruptcy court ultimately determined that "even with the leeway regarding the ultimate calculation of damages in legal malpractice actions and the summary judgment posture of the issue, it is simply not enough for Strong to make vague assertions and then request that the matter be resolved at trial."[110]

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

---

[105] *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 905 (Utah 2012) (internal quotations and punctuation omitted).

[106] *Atkin Wright & Miles v. Mountain States Tel. & Tel. Co.*, 709 P.2d 330, 336 (Utah 1985) (emphasis in original).

[107] *Id*.

[108] Memorandum Decision at 6-10, Aplt. App. Vol. V at 1854-1858.

[109] *Id*. at 6, Aplt. App. Vol. V at 1854 (internal quotations omitted).

[110] *Id*. at 10, Aplt. App. Vol. V at 1858.

party will bear the burden of proof at trial."[111] Therefore, the bankruptcy court did not err when it concluded that Strong was required on summary judgment to present sufficient evidence to create a genuine trial issue on the fact of damages.

**The bankruptcy court did not err when it addressed insurability, duty, and proximate causation when determining that the CAOP I Claim was insufficient to establish damages on Strong's claims**

Strong argues that the bankruptcy court inappropriately addressed insurability, duty, and proximate causation in relation to the CAOP I Claim.[112] However, Prince Yeates's Damages Motion specifically discussed and analyzed each allowed claim from CAREIC's schedules and why such claims were not covered by the AXIS Policy and therefore could not establish damages on Strong's claims.[113] The bankruptcy court correctly observed that "the clear import of the [Damages] Motion [wa]s to challenge [Strong's] assertion that any relevant financial harm to CAREIC occurred."[114] The bankruptcy court also correctly observed that Strong's response[115] "essentially ignored both Prince Yeates' factual averments and legal analysis of CAREIC's scheduled claims, filed claims, and intercompany claims in Addenda A, B, and C."[116] And while Strong's response suggested that he should be given an opportunity to respond to the facts within Addendum C relating to intercompany claims,[117] which included the CAOP I Claim,[118] "Strong

---

[111] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[112] *Id*. at 16-17; Appellant's Reply Brief (Summary Judgment Motion: Damages) ("Appellant's Reply Brief") at 7-10, docket no. 41, filed Jan. 15, 2016.

[113] Damages Motion at 9 ¶ 24, 14-16, 19 Addendum A, 20-35 Addendum B, 36-38 Addendum C, Aplt. App. Vol. IV Part B at 1235, 1240-1242, 1245-1264.

[114] Memorandum Decision at 6 n.15, Aplt. App. Vol. V at 1854.

[115] Opposition to Defendants' Motion for Summary Judgment (Damages) ("Response Re: Damages Motion"), Aplt. App. Vol. V at 1708-1757.

[116] Memorandum Decision at 6, Aplt. App. Vol. V at 1854.

[117] Response Re: Damages Motion at xxiv n.6, Aplt. App. Vol. V at 1731.

[118] Damages Motion at 36-38 Addendum C, Aplt. App. Vol. IV Part B at 1262-1264.

never filed anything further in the six weeks before the hearing [on the Damages Motion, and] did not raise the issue at oral argument."[119] Under these circumstances, the bankruptcy court did not err when it concluded that Strong conceded Prince Yeates's factual averments in Addenda A, B, and C.[120] Nor did the bankruptcy court err when it accepted Prince Yeates's legal analysis that the allowed claims identified in Addenda A, B, and C were not covered by the AXIS Policy.[121]

Additionally, at the Damages Motion hearing, the bankruptcy court repeated asked Strong to identify specific allowed claims that were covered by the AXIS Policy which could result in a loss to CAREIC's estate.[122] Strong recognized that it was his obligation on summary judgment to identify an allowed claim that was covered by the AXIS Policy:[123]

> I don't think it's appropriate to resolve the issue of damages without reference to what constitutes a claim within the meaning of the policy. Because after all, it's the policy that we have to look to to sort of create the universe of claims, i.e., financial losses.[124]

And in response to the bankruptcy court's questions, Strong asserted the CAOP I Claim.[125]

Strong acknowledged that the issues relating to the CAOP I Claim's coverage were briefed.[126] Strong pointed to specific provisions in the AXIS Policy to argue that the CAOP I Claim was covered by the AXIS Policy as a potential claim.[127] Strong also argued that because

---

[119] Memorandum Decision at 4 n.4, Aplt. App. Vol. V at 1852.

[120] *Id*. at 6, Aplt. App. Vol. V at 1854; Fed. R. Civ. P. 56(e).

[121] Memorandum Decision at 6, Aplt. App. Vol. V at 1854; Fed. R. Civ. P. 56(e).

[122] Transcript of Electronically Recorded motion for Summary Judgment Re: Damages ("Damages Motion Hearing Transcript") at 16:17-17:1, 23:24-24:1, 30:12-14, 33:13, 34:5-8, 35:7-10, Aplt. App. Vol. V at 1904-1905, 1911-1912, 1918, 1921-1923.

[123] *Id*. at 17:2-9, 41:2-9, Aplt. App. Vol. V at 1905, 1929.

[124] *Id*. at 36:2-6, Aplt. App. Vol. V at 1924.

[125] *Id*. at 17:10-18:2, 24:2, 34:9-15, 35:11-12, Aplt. App. Vol. V at 1905-1906, 1912, 1922.

[126] *Id*. at 21:15-16, Aplt. App. Vol. V at 1909.

[127] *Id*. at 17:19-18:23, 19:5-21:2, 21:16-23:16, 28:18-29:11, 29:19-30:4, Aplt. App. Vol. V at 1905-1911, 1916-1918.

Prince Yeates was aware of the intercompany transfer from which the CAOP I Claim arose, Prince Yeates had a duty to report the CAOP I Claim to CAREIC's insurance carrier as a potential claim.[128] Strong further argued that the issue of proximate cause "has to inform the court's view of damages."[129] Nevertheless, Strong maintained that the CAOP I Claim's coverage and whether Prince Yeates should have reported the claim to the insurance carrier were trial issues that were beyond the scope of Prince Yeates's Damages Motion.[130]

In ruling on Prince Yeates's Damages Motion, the bankruptcy court's analysis tracked that of Strong's arguments at the Damages Motion hearing, though reaching different conclusions.[131] The bankruptcy court analyzed the language of the AXIS Policy to determine whether the CAOP I Claim was reportable as a potential claim at the time of Prince Yeates's representation, and determined it was not.[132] The bankruptcy court then acknowledged that "the CAOP I issue is best viewed through the lens of Prince Yeates'[s] duty to CAREIC, any breach of that duty (or an express contractual promise and any breach of that promise), and/or proximate cause rather than damages *per se*."[133] But concluded that, regardless, "it still leads to the same result—that Strong is unable as a matter of law to hold Prince Yeates liable for the absence of insurance coverage for the CAOP I [Claim]."[134] The bankruptcy court also rejected Strong's

---

[128] *Id*. at 21:16-23:16, 25:25-26:8, 29:19-30:4, Aplt. App. Vol. V at 1909-1911, 1913-1914, 1917-1918.

[129] *Id*. at 24:12-25:16, 25:25-26:8, 29:19-30:4, 30:17-31:4, Aplt. App. Vol. V at 1912-1914, 1917-1919.

[130] *Id*. at 21:3-14, 23:13-22, 25: 4-26:8, 29:12-18, Aplt. App. Vol. V at 1909, 1911, 1913-1914, 1917.

[131] Memorandum Decision at 6-9, Aplt. App. Vol. V at 1853-1857.

[132] *Id*. at 8-9, Aplt. App. Vol. V at 1856-1857.

[133] *Id*. at 9, Aplt. App. Vol. V at 1857.

[134] *Id*.

attempts to "define away his obligation on summary judgment."[135] The bankruptcy court
reasoned:

> Regarding the creation, nature, and amount of the CAOP I [Claim], the relevant
> facts have already been stated by the parties, and the Court can see no
> circumstance in which further legal briefing would matter. As such, there is no
> justification to allow Strong to start the process of heading to trial when there is
> no genuine issue to resolve, even if the issue does not go directly (or at least
> solely) toward the issue of damages.[136]

Contrary to Strong's arguments on appeal, the damages issue presented in Prince
Yeates's Damages Motion directly implicated whether an allowed claim that was covered by the
AXIS Policy existed for which Prince Yeates's could be held liable for failing to report to
CAREIC's insurance carrier.[137] The Damages Motion placed Strong on notice that to avoid
summary judgment, he must present evidence of an allowed claim—whether actual or
potential—that was covered by the AXIS Policy and which should have been reported to the
insurance carrier by Prince Yeates. At the Damages Motion hearing, Strong acknowledged this
obligation[138] and presented argument regarding the CAOP I Claim's coverage and why the claim
should have been reported by Prince Yeates.[139] Therefore, the bankruptcy court did not err in
analyzing whether the CAOP I Claim was reportable as a potential claim under the AXIS Policy
when determining that the CAOP I Claim was insufficient to establish the existence of damages
on Strong's claims.

---

[135] *Id*. at 6 n.15, Aplt. App. Vol. V at 1854.

[136] *Id*. at 9 n.22, Aplt. App. Vol. V at 1857

[137] Damages Motion at 14-17, Aplt. App. Vol. IV Part B at 1240-1243.

[138] Damages Motion Hearing Transcript at 17:2-9, 36:2-6, 41:2-9, Aplt. App. Vol. V at 1905, 1924, 1929.

[139] *Id*. at 17:19-18:23, 19:5-21:2, 21:16-23:16, 24:12-25:16, 25:25-26:8, 28:18-29:11, 29:19-30:4, 30:17-31:4, Aplt. App. Vol. V at 1905-1914, 1916-1919.

**The bankruptcy court did not err when it concluded that the CAOP I Claim was insufficient to establish the existence of damages on Strong's claims**

"An insurance policy is merely a contract between the insured and the insurer and is construed pursuant to the same rules applied to ordinary contracts."[140] "When interpreting a contract, [courts] look to the writing itself to ascertain the parties' intentions, and [courts] consider each contract provision . . . in relation to all of the others, with a view toward giving effect to all and ignoring none."[141] But because insurance policies are "adhesion contracts drafted by the insurance companies," they are "strictly construed against the insurer and in favor of the insured."[142] "It follows that ambiguous or uncertain language in an insurance contract that is fairly susceptible to different interpretations should be construed in favor of coverage."[143] "It also follows that if an insurance contract has inconsistent provisions, one which can be construed against coverage and one which can be construed in favor of coverage, the contract should be construed in favor of coverage."[144] However, "if a policy is not ambiguous, no presumption in favor of the insured arises and the policy language is construed according to its usual and ordinary meaning,"[145] and the policy may be interpreted as a matter of law.[146]

Neither party argues that the AXIS Policy is ambiguous or inconsistent. Nor does the AXIS Policy appear ambiguous or inconsistent on its face. Therefore, the bankruptcy court did not err in interpreting the AXIS Policy as a matter of law or construing its language according to usual and ordinary meaning.

---

[140] *Alf v. State Farm Fire & Cas. Co.*, 850 P.2d 1272, 1274 (Utah 1993).

[141] *Green River Canal Co. v. Thayn*, 84 P.3d 1134, 1141 (Utah 2003) (internal quotations omitted).

[142] *United States Fid. & Guar. Co. v. Sandt,* 854 P.2d 519, 522 (Utah 1993).

[143] *Id*.

[144] *Id*. at 523.

[145] *Alf*, 850 P.2d at 1274.

[146] *Thayn*, 84 P.3d at 1141.

The AXIS Policy's definition of "Claim" includes "the receipt by any Insured of . . . a written demand against any Insured for monetary or non-monetary relief" and "a civil, criminal, arbitration, administrative, investigative or regulatory proceeding against any Insured."[147] The AXIS Policy's "Insured Organization Liability Coverage" provision then sets the conditions on which a Claim must be reported to the carrier for coverage:

> [AXIS] shall pay in connection with a Wrongful Act which takes place before or during the Policy Period all Loss on behalf of the Policyholder for which the Policyholder becomes legally obligated to pay as a result of a Claim first made during the Policy Period or Extended Reporting Period, if applicable, and reported in writing to [AXIS] as soon as practicable after any Insured first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period or Extended Reporting Period, if applicable.[148]

And the AXIS Policy's "Awareness Provision" extends coverage for potential claims:

> If during the Policy Period any Insured becomes aware of circumstances which could give rise to a Claim, and the Insured gives written notice of such circumstances to [AXIS] during the Policy Period, then any Claim subsequently arising from such circumstances shall be considered to have been made during the Policy Period in which the circumstances were first reported to the Insurer.[149]

However, the AXIS Policy contains several exclusions of coverage, including an "Insured vs. Insured Exclusion," which states:

> [AXIS] shall not be liable for Loss arising from any Claim made against any Insured . . . brought or maintained by or on behalf of any Insured.[150]

But the AXIS Policy also includes a "Liquidator Exception" to the Insured vs. Insured Exclusion in which coverage is retained where the Claim is:

[147] AXIS Policy at 3 § III.A., Endorsement 7 § I.A., Aplt. App. Vol. IV Part B at 1277, 1298.

[148] Id. at Endorsement 8 § 1.B., Aplt. App. Vol. IV Part B at 1301.

[149] Id. at 12 § VI.A., Aplt. App. Vol. IV Part B at 1286.

[150] Id. at 7-8 § IV.A.5., Endorsement 7 § II.A.5., Aplt. App. Vol. IV Part B at 1281-1282, 1299.

brought or maintained by or on behalf of a bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee of a Policyholder, or any assignee thereof.[151]

Strong argues that the bankruptcy court erred in determining that the CAOP I Claim was not reportable under the AXIS Policy as a potential claim at the time of Prince Yeates's representation of CAREIC.[152] Specifically, Strong argues that the bankruptcy court failed to broadly construe the Awareness Provision in favor of coverage and failed to account for the Liquidator Exception to the Insured vs. Insured Exclusion.[153] Strong's argument lacks merit.

The AXIS Policy's Awareness Provision allows for coverage of potential claims that were reported "[i]f during the Policy Period any Insured becomes aware of circumstances which could give rise to a Claim."[154] The Policy Period ended January 20, 2012,[155] which was also the deadline for reporting potential claims to CAREIC's insurance carrier.[156] At that time, Prince Yeates had reviewed CAREIC and its affiliates' bankruptcy schedules to "identify inter-corporate claims and potential bankruptcy causes of action in connection with [the January 12, 2019] motion for joint administration" that Prince Yeates filed.[157] From this review, Prince Yeates was or should have been aware that CAREIC listed transfers of land and water rights in its Statement of Financial Affairs, but not as claims.[158] Prince Yeates was or should have also

---

[151] *Id.* at 8 § IV.A.5., Endorsement 7 § II.A.5.(c), Aplt. App. Vol. IV Part B at 1282, 1299.

[152] Brief of Appellant at 14-26.

[153] *Id.*

[154] AXIS Policy at 12 § VI.A., Aplt. App. Vol. IV Part B at 1286.

[155] *Id.* at Endorsement 16, Aplt. App. Vol. IV Part B at 1313.

[156] *Id.* at 12 § VI, Endorsement 8 § I.B., Endorsement 16, Aplt. App. Vol. IV Part B at 1286, 1301, 1313; AXIS Policy Declarations at 1 Item 5, Aplt. App. Vol. IV Part B at 1273.

[157] Application for Allowance of Attorney Fees and Costs at Exhibit B, Aplt. App. Vol. II at 479; Memorandum Decision at 9, Aplt. App. Vol. V at 1857.

[158] Statement of Financial Affairs – Amended at 7, Aplt. App. Vol. I at 249.

been aware that CAOP I listed a contingent and unliquidated claim of "unknown" value for breach of fiduciary duty against CAREIC related to the Tooele land and water transaction.[159]

This information was enough for Prince Yeates to make generalized assertions in the motion for joint administration that "[t]here are intercompany obligations between CAREIC and each of [its] Affiliates," and that "there *may* exist intercompany transfers between CAREIC and [its] Affiliates that are subject to a trustee's avoiding powers under 11 U.S.C. §§ 544, 547, and/or 548."[160] But the scheduling of a contingent, unliquidated claim of unknown value against CAREIC was not sufficient information for Prince Yeates to be "aware of circumstances which could give rise to a Claim"[161] for purposes of reporting a potential claim under the AXIS Policy's Awareness Provision. The "circumstances which could give rise" to the CAOP I Claim being a "Claim" had not yet occurred.

The CAOP I Claim remained contingent and unliquidated for two and a half years after Prince Yeates's representation of CAREIC ended. It was not until November 2014, when the CAOP I Trust and the CAREIC Trust entered a settlement agreement—with Strong participating as liquidating trustee for both sides—that the CAOP I Claim's $2.9 million value as a general unsecured claim was established.[162] And the CAOP I Claim was not allowed until December 4, 2014, when the bankruptcy court approved the settlement agreement.[163] Moreover, the settlement agreement came about only after Strong (i) was appointed as CAREIC's Chapter 11 trustee,[164]

---

[159] Schedule B – Personal Property – Amended, Aplt. App. Vol. III at 1061(M).

[160] Motion for Joint Administration at 5 ¶¶ 15-16, Aplt. App. Vol. I at 267 (emphasis added).

[161] AXIS Policy at 12 § VI.A., Aplt. App. Vol. IV Part B at 1286.

[162] Strong Declaration at 4 ¶¶ 9-10, Aplt. App. Vol. III at 1018; Settlement Agreement at 4 § 2(d), Aplt. App. Vol. III at 1030

[163] Order Approving Settlement Agreement, Aplt. App. Vol. III at 1023-1025.

[164] Order for Appointment of Trustee, Aplt. App. Vol. II at 462-463; Notice of Appointment of Chapter 11 Trustee, Cross-Aplt. App. Vol 1 at 306-307, docket no. 35-1, filed Nov. 13, 2015

(ii) became manager of CAOP I's estate as DIP,[165] and (iii) obtained the bankruptcy court's confirmation of his Plan of Liquidation.[166] All of these events were necessary before the CAOP I Claim could be a Claim, *i.e.*, a written demand for monetary relief received by CAREIC or a civil proceeding against CAREIC.[167] These events occurred well after the Policy Period ended and the deadline for reporting potential claims to CAREIC's insurance carrier ran on January 20, 2012.[168] And they occurred well after Prince Yeates's representation of CAREIC ended on May 3, 2012.[169]

Additionally, Prince Yeates's knowledge of the information in CAOP I's amended bankruptcy schedule and the language of the Awareness Provision cannot be viewed in a vacuum. Rather, they must be viewed in relation to other information known to Prince Yeates at the time and the AXIS Policy's other provisions, including exclusions of coverage.[170] As Strong conceded in the adversary proceeding and on appeal, CAREIC and CAOP I were both "Policyholders" and "Insureds" under the AXIS Policy.[171] Because of this, a Claim against CAREIC brought by or on behalf of CAOP I at the time the Policy Period ended would have fallen directly under the plain language of the Insured vs. Insured Exclusion.[172] Therefore, even if Prince Yeates could have been aware of circumstances that would permit the CAOP I Claim to

---

[165] Opposition to Defendants' Motion for Summary Judgment (Damages) at xiv ¶ 12, Aplt. App. Vol. V at 1721.

[166] Order Confirming Plan of Liquidation, Aplt. App. Vol. III at 967-975.

[167] AXIS Policy at 3 § III.A., Endorsement 7 § I.A., Aplt. App. Vol. IV Part B at 1277, 1298.

[168] *Id.* at 12 § VI, Endorsement 8 § I.B., Endorsement 16, Aplt. App. Vol. IV Part B at 1286, 1301, 1313; AXIS Policy Declarations at 1 Item 5, Aplt. App. Vol. IV Part B at 1273.

[169] Application for Allowance of Attorney Fees and Costs at 2 ¶ 1.b., Aplt. App. Vol. II at 465; Opposition to Defendants' Motion for Summary Judgment (Damages) at xv ¶ 13, Aplt. App. Vol. V at 1722;

[170] *Thayn*, 84 P.3d at 1141.

[171] Damages Motion Hearing Transcript at 17:19-18:2, Aplt. App. Vol. V at 1905-1906; Brief of Appellant at 5 ¶¶ 9-10.

[172] AXIS Policy at 7-8 § IV.A.5., Endorsement 7 § II.A.5., Aplt. App. Vol. IV Part B at 1281-1282, 1299.

be a "Claim," the CAOP I Claim would have been excluded from coverage at the time the Policy Period ended and the deadline for reporting potential claims to the insurance carrier ran,[173] as well as during the entirety of Prince Yeates's representation of CAREIC.[174]

It was not until June 7, 2013—over a year after Prince Yeates' representation ended—that the bankruptcy court confirmed Strong's Plan of Liquidation and Strong became liquidating trustee of the CAOP I Trust.[175] At that point, the CAOP I Claim's coverage status under the AXIS Policy arguably changed because it could have been "brought or maintained by or on behalf of a bankruptcy . . . liquidator" and fallen within the Liquidator Exception to the Insured vs. Insured Exclusion.[176] Prior to that time, the Liquidator Exception was inapplicable to the CAOP I Claim because Strong was managing CAOP I's estate as DIP.[177] There was no "bankruptcy or insolvency receiver, trustee, examiner, conservator, liquidator, rehabilitator or creditors' committee of [CAOP I], or any assignee thereof"[178] to bring or maintain the CAOP I Claim.

Under these circumstances, the bankruptcy court did not err when it concluded that that Prince Yeates could not be "retrospectively saddled" with a duty to report the CAOP I Claim to CAREIC's insurance carrier.[179] The "circumstances which could give rise" to the CAOP I Claim

---

[173] *Id*. at 12 § VI, Endorsement 8 § I.B., Endorsement 16, Aplt. App. Vol. IV Part B at 1286, 1301, 1313; AXIS Policy Declarations at 1 Item 5, Aplt. App. Vol. IV Part B at 1273.

[174] Letter Re: Representation in Bankruptcy, Aplt. App. Vol. IV Part A at 1127-1128, Application for Allowance of Attorney Fees and Costs at 2 ¶¶ 1.b., 2.c., Aplt. App. Vol. II at 465; Opposition to Defendants' Motion for Summary Judgment (Damages) at xv ¶ 13, Aplt. App. Vol. V at 1722.

[175] Order Confirming Plan of Liquidation at 3-4 ¶¶ 5-6, Aplt. App. Vol. III at 969-970.

[176] AXIS Policy at 8 § IV.A.5., Endorsement 7 § II.A.5.(c), Aplt. App. Vol. IV Part B at 1282, 1299.

[177] Opposition to Defendants' Motion for Summary Judgment (Damages) at xiv ¶ 12, Aplt. App. Vol. V at 1721; Memorandum Decision at 3, Aplt. App. Vol. V at 1851.

[178] AXIS Policy at 8 § IV.A.5., Endorsement 7 § II.A.5.(c), Aplt. App. Vol. IV Part B at 1282, 1299.

[179] Memorandum Decision at 9, Aplt. App. Vol. V at 1857.

being a "Claim" for purposes of reporting under the AXIS Policy's Awareness Provision[180] had not occurred when the Policy Period ended and the deadline for reporting potential claims ran,[181] or during Prince Yeates's representation of CAREIC.[182] The CAOP I Claim at that time was at best a *potential* potential claim, its existence hinging entirely on contingent and unknowable future actions that were later unilaterally taken by Strong. Therefore, the bankruptcy court did not err in concluding that the CAOP I Claim was insufficient to establish the existence of damages on Strong's claims.

Because the bankruptcy court did not err in granting Prince Yeates's Damages Motion, Strong's appeal[183] is DENIED and DISMISSED with prejudice. The bankruptcy court's memorandum decision[184] and order[185] granting Prince Yeates's Damages Motion, and its judgment[186] dismissing the adversary proceeding are AFFIRMED. And consequently, Prince Yeates's cross-appeal[187] is MOOT.

---

[180] AXIS Policy at 12 § VI.A., Aplt. App. Vol. IV Part B at 1286.

[181] *Id*. at 12 § VI, Endorsement 8 § I.B., Endorsement 16, Aplt. App. Vol. IV Part B at 1286, 1301, 1313; AXIS Policy Declarations at 1 Item 5, Aplt. App. Vol. IV Part B at 1273.

[182] Letter Re: Representation in Bankruptcy, Aplt. App. Vol. IV Part A at 1127-1128, Application for Allowance of Attorney Fees and Costs at 2 ¶¶ 1.b., 2.c., Aplt. App. Vol. II at 465; Opposition to Defendants' Motion for Summary Judgment (Damages) at xv ¶ 13, Aplt. App. Vol. V at 1722.

[183] Notice of Appeal and Statement of Election.

[184] Memorandum Decision, Aplt. App. Vol. V at 1849-1859.

[185] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862.

[186] Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[187] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.

**ORDER**

IT IS HEREBY ORDERED that Strong's appeal[188] is DENIED and DISMISSED with prejudice. The bankruptcy court's memorandum decision[189] and order[190] granting Prince Yeates's Damages Motion, and its judgment[191] dismissing the adversary proceeding are AFFIRMED. Prince Yeates's cross-appeal[192] is MOOT.

The Clerk is directed to close the case.

Signed September 16, 2019.

BY THE COURT

_David Nuffer_

David Nuffer
United States District Judge

---

[188] Notice of Appeal and Statement of Election.

[189] Memorandum Decision, Aplt. App. Vol. V at 1849-1859.

[190] Order Granting Summary Judgment in Favor of Defendants, Aplt. App. Vol. V at 1860-1862.

[191] Judgment Dismissing Adversary Proceeding, Aplt. App. Vol. V at 1863-1865.

[192] Notice of Cross-Appeal and Statement of Election, Cross-Aplt. App. Vol. 8 at 2721-2737.